IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**CECIL L. TUCKER, JR., and**
**SHANNON R. TUCKER,**

            Plaintiffs,

v.                                        **Civil Action No. 3:10-CV-59**
                                                    **(BAILEY)**

**NAVY FEDERAL CREDIT UNION,**

            Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before this Court is Defendant Navy Federal Credit Union's Motion for Summary Judgment [Doc. 59], filed October 17, 2011. The plaintiffs responded on November 8, 2011 [Doc. 65], and the defendant replied on November 22, 2011 [Doc. 66]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

**I.**    **Factual History**

    **A.**    **Undisputed Material Facts**

Since 2007, Navy Federal Credit Union ("Navy Federal") has loaned the plaintiffs over $100,000 in the form of two unsecured personal expense loans, three secured vehicle loans, and three credit cards. The outstanding balance at the time the plaintiffs recently received a discharge in bankruptcy was $88,433.09.

In late 2009, the plaintiffs began defaulting on their loans. As a result, beginning in

1

January 2010, Navy Federal attempted to contact the plaintiffs to discuss the loans. On a number of occasions when Navy Federal telephoned the plaintiffs, Mr. Tucker answered but immediately ended the call to prevent Navy Federal from leaving a voicemail. On other occasions, Mr. Tucker would press "answer ignore" on his cell phone to mimic a dropped call and prevent Navy Federal from leaving a voicemail. On at least four occasions, Ms. Tucker answered, pretended she was someone else, and forwarded the calls to her voicemail. In April 2010, Navy Federal and the plaintiffs entered into extension agreements on two of the loans.

Each of the agreements involved expressly permits Navy Federal to seek attorneys' fees and other costs related to the collection of its debt in the event of default. Each agreement also unambiguously provides that Navy Federal may report the plaintiffs' defaults to consumer reporting agencies.

### B. Disputed Material Facts

Based upon call logs that Navy Federal disclosed during discovery, the plaintiffs contend that Navy Federal made 548 phone calls during a period of six months in 2010 concerning eight different accounts. Navy Federal disputes this contention, arguing that the number offered is not clearly reflected in the call logs produced.

### III. Procedural History

On June 10, 2010, the plaintiffs filed suit against Navy Federal in the United States District Court for the Northern District of West Virginia [Doc. 1], claiming that between January and June of 2010, the Navy Federal committed several violations of the West Virginia Credit and Consumer Protection Act ("WVCCPA"), W.Va. Code § 46A-2-122, *et seq.*, as well as the tort of intentional infliction of emotional distress. For the most part, the

plaintiffs allege that these violations stemmed from multiple telephoned calls Navy Federal made during that six-month period in an attempt to collect on their automobile loans, personal loans, and credit card accounts. When filed, the Complaint contained three counts.

In Count I, the plaintiffs allege that each phone call made between January and June of 2010 violated W.Va. Code §§ 46A-2-125, 46A-2-126, 46A-2-127, 46A-2-128, and 46A-2-129a. In addition, the plaintiffs allege that Navy Federal faxed collection letters to their places of employment, in violation of W.Va. Code §§ 46A-2-125, 46A-2-127, 46A-2-128, and 46A-2-129a. Further, the plaintiffs allege that these fax transmissions stated that it was "imperative," "very urgent," and that a call back should be made "immediately," in violation of W.Va. Code §§ 46A-2-125, 46A-2-127, and 46A-2-128. Finally, the plaintiffs allege that their automobile loan contracts violate the provisions of the WVCCPA and thus are unenforceable and void. ([Doc. 1] at ¶¶ 10-24). In Count II, the plaintiffs claim that the violations contained in Count I were committed willfully, and thus, the plaintiffs should be awarded punitive damages. In support of this claim, the plaintiffs allege that the actions of Navy Federal represent its stated policy and were carried out by its employees in knowing violation of state law. (Id. at ¶ 25). In Count III, the plaintiffs claim that Navy Federal committed the tort of intentional infliction of emotional distress ("IIED"). In support of this claim, the plaintiffs allege that the actions of Navy Federal were willful and malicious. (Id. at ¶ 26).

On July 6, 2010, Navy Federal moved to dismiss the Complaint or to order the plaintiffs to provide a more definite statement of their claims [Doc. 6]. On August 26, 2010, this Court denied the motion, concluding that dismissal was premature and that the

plaintiffs' allegations were not so indefinite that the defendant could not ascertain the nature of the claims being asserted [Doc. 11].

On August 30, 2010, Navy Federal answered the Complaint and counterclaimed for breach of contract, detinue, and unjust enrichment [Doc. 14]. On September 17, 2010, the plaintiffs answered Navy Federal's counterclaims, denying liability [Doc. 22].

The plaintiffs jointly filed a voluntary Chapter 7 bankruptcy petition on October 28, 2010, in the United States Bankruptcy Court for the Northern District of West Virginia [Doc. 25]. In recognition of the automatic stay provisions of 11 U.S.C. § 362, this Court ordered this matter stayed on November 1, 2011 [Doc. 26]. On January 3, 2011, the plaintiffs moved to lift the stay, noting that the bankruptcy court had ordered on December 29, 2010, that the plaintiffs' counsel in this civil action be employed as special counsel for the purpose of pursuing their consumer protection claims against Navy Federal [Doc. 27]. This Court lifted the stay on the same day [Doc. 28].

After the close of discovery on September 22, 2011, Navy Federal filed the instant Motion for Summary Judgment on October 17, 2011 [Doc. 59], arguing that the plaintiffs have failed to present a genuine issue of material fact on any of their claims. For example, Navy federal argues that although there is no dispute that it made numerous attempts to contact the plaintiffs between January and June of 2010, the plaintiffs have presented no genuine issue of material fact that Navy Federal's intent was to annoy, harass, or threaten [Doc. 59-1].

During the briefing of this motion, the parties attended a mediation conducted by United States Magistrate Judge David J. Joel on October 26, 2011. The mediation did not result in settlement. However, the plaintiffs moved to voluntarily dismiss Count III (IIED)

on November 4, 2011 [Doc. 63], which this Court granted on November 7, 2011 [Doc. 64].

On November 8, 2011, the plaintiffs filed a Response [Doc. 65], arguing that they have presented genuine issues of material fact that preclude summary judgment. For example, the plaintiffs argue that the intent to annoy, harass, or threaten can be inferred from the number of calls placed to the plaintiffs during a six month period, which the plaintiffs contend that Navy Federal's call logs show totaled approximately 548 calls.

On November 16, 2011, the bankruptcy court granted the plaintiffs a discharge pursuant to 11 U.S.C. § 727. A week later, on November 22, 2011, Navy Federal filed a Reply [Doc. 66], reiterating and supplementing its previous arguments for summary judgment.

On November 29, 2011, the parties filed a joint stipulation withdrawing the plaintiffs' request for a jury trial and requesting that this matter proceed as a bench trial [Doc. 69]. In light of this stipulation, this Court terminated the November 30, 2011, deadline for jury instructions, voir dire, and verdict forms and ordered the parties to file proposed findings of fact and conclusions of law on or before December 16, 2011 [Doc. 70]. The parties filed their Joint Pretrial Order [Doc. 81] on December 12, 2011.

A pretrial conference is currently scheduled for December 29, 2011, to be followed by a bench trial on January 10, 2012 [Doc. 13].

## **DISCUSSION**

I.  **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

5

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.* at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

## II. Analysis

In its motion, Navy Federal argues that it is entitled to summary judgment on both of the plaintiffs' remaining counts, while the plaintiffs argue that they have presented genuine issues of material fact which preclude summary judgment on either count. Below, the Court will consider each count in turn.

### A. Count I: Violations of Numerous Debt Collection Statutes

#### 1. W.Va. Code § 46A-2-125 (Oppression and Abuse)

During discovery, the plaintiffs limited their claim of oppression and abuse to § 46A-

6

2-125(d), which prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number."

In its motion, Navy Federal contends that there is insufficient evidence that it violated § 46A-2-125(d). Though Navy Federal does not dispute that it placed numerous calls to the plaintiffs, it argues that the number of calls made was primarily due to the fact that the calls did not connect, and had to be redialed. Specifically, Navy Federal notes that Mr. Tucker testified during his deposition that on several occasions, he purposefully disconnected the call by pressing answer and then ignore on his cell phone to mimic a dropped call and to prevent Navy Federal from leaving a voicemail. Similarly, Ms. Tucker testified during her deposition that on at least four occasions, she answered calls from Navy Federal, pretended that she was someone else, and forwarded the calls to her voicemail. With regard to the content of the calls, Ms. Tucker testified that she did not find the calls to be harassing. As for the timing of the calls, Navy Federal's call logs reflect that no calls were made before 8:00 a.m. or after 9:00 p.m. Also in this regard, Ms. Tucker admitted during discovery that she never advised Navy Federal that a particular time of day was inconvenient for her to receive a call. In addition, Navy Federal argues that there is no evidence of an intent to annoy, abuse, oppress, or threaten the plaintiffs. Instead, according to Navy Federal's manager of specialized collections, the purpose of the calls was to negotiate payment plans, to ascertain the status and assurance of payments, to provide financial management counseling, to protect the credit of its members, and to keep their accounts current. In fact, in April 2010, the calls resulted in the negotiation of two

7

extension agreements that enabled the plaintiffs to avoid repossession of their two automobiles. During his deposition, Mr. Tucker acknowledged that Navy Federal was trying to help him.

In response, the plaintiffs argue that Navy Federal's call logs show that it called them approximately 548 times or more from January 4, 2010, to June 25, 2010. As such, the plaintiffs contend that Navy Federal's intent to annoy, abuse, oppress, or threaten can be inferred from the number of calls. In support of this proposition, the plaintiffs cite **Duncan v. JP Morgan Chase Bank, N.A.**, 2011 WL 5359698 (S.D. W.Va. Nov. 4, 2011).

In reply, Navy Federal asserts that for the number of calls to create an inference of the requisite intent described in § 46A-2-125(d), **Duncan** requires that there be some evidence that the plaintiffs asked Navy Federal to cease communications with them. However, Navy Federal argues that the plaintiffs themselves continued the communications in many instances and those communications resulted in loan extensions.

Upon careful consideration of the above, this Court concludes that the plaintiffs have presented a genuine issue of material fact with regard to whether Navy Federal acted with the intent required to violate § 46A-2-125(d). In so concluding, this Court rejects Navy Federal's reading of **Duncan**. In **Duncan**, JP Morgan Chase Bank, N.A. ("Chase") placed 68 phone calls to a consumer over a period of 11 months. During that period, the consumer requested that Chase cease and desist from placing any further phone calls. When the calls continued, the consumer then sued Chase for violating § 46A-2-125(d). Chase moved for summary judgment, arguing that the consumer had failed to present sufficient evidence of the requisite intent. The consumer responded that the intent element could be satisfied by the volume of calls. The court concluded that the consumer had

"made the requisite showing to demonstrate a genuine issue of material fact with respect to the issue of [Chase's] intent, *given the number of calls which were repeatedly placed . . ..*" **Duncan**, 2011 WL 5359698, at *4 (emphasis added). The court explained that "[t]he plain language of [§ 46A-2-125(d)] aptly sets forth that a statutory violation can be bourne from the mere volume of calls placed to a debtor. This is so, based on the statute's reference to calls which are 'repeated[ ]' or 'continuous[.]'" *Id.* Nothing in **Duncan** requires that a consumer ask a debt collector to cease and desist as a prerequisite to bringing a § 46A-2-125(d) claim.

Like the consumer in **Duncan**, the plaintiffs have successfully presented a genuine issue of material fact with respect to the issue of Navy Federal's intent, given the number of calls which were repeatedly placed to the plaintiffs' phones.[1] This Court agrees with the reasoning in **Duncan** that the plain language of § 46A-2-125(d) supports this conclusion. Specifically, the statute explains that calls can be abusive in three ways, namely: (1) when the calls are made "repeatedly or continuously;" (2) when the calls are made "at unusual times;" or (3) when the calls are made "at times known to be inconvenient." W.Va. Code § 46A-2-125(d). Only the third avenue appears to imply that the debt collector *know* the

---

[1]Navy Federal disputes that it made 548 phone calls during the relevant time period. In so doing, Navy Federal objects to the plaintiffs' Exhibits A and C, which are the call logs Navy Federal produced in discovery and the plaintiffs' summary of those calls, respectively. For at least two reasons, Navy Federal's objection should be overruled. First, this Court is at a loss to understand Navy Federal's objection to Exhibit A in light of the fact that Navy Federal has provided the same exhibit as Defendant's Trial Exhibit Nos. 10 and 11. Second, at this stage, this Court finds no issue with the plaintiffs' Exhibit C, which appears to constitute a demonstrative exhibit of the calls placed. In sum, this Court finds that the exact number of calls made is an issue reserved for the trier of fact, though a review of the call logs leads this Court to believe that the volume of calls reflected is sufficient to preclude summary judgment.

calls are inconvenient. Here, however, the plaintiffs rely almost exclusively upon the volume of calls, or their repeated nature, to claim abuse. In this case, that reliance is sufficient to preclude summary judgment. Accordingly, the plaintiffs' § 46A-2-125(d) claims in Count I **MAY PROCEED**. In this regard, this Court notes that it will hear evidence at trial regarding the particular circumstances surrounding each call, unless satisfied with the parties' forthcoming joint exhibit.

### 2. W.Va. Code § 46A-2-126 (Unreasonable Publication)

During discovery, the plaintiffs limited their claim of unreasonable publication to § 46A-2-126(b), which prohibits a debt collector from unreasonably publicizing information related to any alleged indebtedness or consumer to "any relative or family member of the consumer if such a person is not residing with consumer, except through proper legal action or process or at the express and unsolicited request of the relative or family member."

In its motion, Navy Federal states that while it did "inadvertently speak with Ms. Tucker's aunt when it called for Ms. Tucker, Plaintiffs acknowledge that Navy Federal did not disclose any information relating to [their] indebtedness." ([Doc. 59-1] at 7). "In fact," Navy Federal notes, "anything the aunt would have known about the debts owed to Navy Federal was a result of Plaintiffs providing her with this information." (Id.). Specifically, "[t]he aunt worked with Ms. Tucker [who] acknowledged talking with her aunt at a family function and prior to the time of the call with Navy Federal about financial troubles with several creditors, including Navy Federal." (Id.). In response, the plaintiffs question what reason Navy Federal would have to contact Ms. Tucker's aunt if not to collect its debt. The plaintiffs also note that Navy Federal sent a fax to Ms. Tucker's place of employment and

10

that it is unknown how many coworkers read the contents of this fax.[2] In reply, Navy Federal emphasizes that the plaintiffs do not dispute that it did not disclose any information of indebtedness to Ms. Tucker's aunt and that the aunt was already aware of the plaintiffs' indebtedness. Instead, the plaintiffs state only that the content of the phone conversation could not be ascertained from the call logs. Navy Federal notes that the fax does not convey any information about the plaintiffs' indebtedness. In their Joint Pretrial Order, the parties stipulate that "[t]he fax sent to Ms. Tucker at her work did not disclose information about Plaintiffs' indebtedness." ([Doc. 81] at 10).

Upon careful consideration of the above, this Court concludes that the plaintiffs have failed to present a genuine issue of material fact with regard to whether information concerning their indebtedness was disclosed in violation of § 46A-2-126(b). First, the parties' stipulation that the fax sent to Ms. Tucker at her place of employment did not disclose any information about the plaintiffs' indebtedness limits the plaintiffs' § 46A-2-126(b) claim to Navy Federal's phone conversation with Ms. Tucker's aunt. Second, the plaintiffs have failed to offer sufficient evidence that Navy Federal disclosed any information of the plaintiffs' indebtedness during that phone conversation. In fact, Ms. Tucker testified during her deposition that her aunt merely answered the phone and took a message that it was imperative for Ms. Tucker to call Navy Federal. (See [Doc. 59-4] at 4). Accordingly, the plaintiffs' § 46A-2-126(b) claim in Count I is hereby **DISMISSED**.

---

[2]In addition, the plaintiffs claim, apparently for the first time, that Navy Federal threatened to contact Mr. Tucker's commanding officer on several occasions. ([Doc. 65] at 8). The plaintiffs then argue that this conduct violated §§ 46A-2-126 and 46-2-124(f). First, § 46A-2-126 has no application to *threats* to disclose information. Second, the plaintiffs are precluded from asserting a violation of § 46A-2-124(f) because they neither asserted said claim in their Complaint nor sought leave to amend.

### 3. W.Va. Code § 46A-2-127 (Fraudulent, Deceptive, or Misleading Representations)

During discovery, the plaintiffs limited their claim that Navy Federal used fraudulent, deceptive, or misleading representations to the statute's general prohibition and § 46A-2-127(g), which prohibits a debt collector from using "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." Specifically, in response to Navy Federal's interrogatories, the plaintiffs stated that Navy Federal violated § 46A-2-127 by: (1) sending letters "threatening to garnish wages"; (2) threatening to charge them "the legal fees and costs of suing [them]"; and (3) "misrepresenting that [Navy Federal] would negatively report [their] debts." ([Doc. 59-6] at 3); [Doc. 59-7] at 3).

In its motion, Navy Federal argues that none of the specified representations are fraudulent, deceptive, or misleading. First, Navy Federal contends that it could have obtained a judgment and garnished the plaintiffs' wages pursuant to W.Va. Code §§ 38-7-15 and 46A-2-118. Similarly, Navy Federal asserts that it was entitled to report the plaintiffs' defaults to consumer reporting agencies pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Finally, Navy Federal notes that the loan documents and credit card contracts provide that in the event of default, all reasonable costs of collection, including court costs, expenses, and reasonable attorneys' fees will be paid by the borrower. In response, the plaintiffs argue that the representation regarding the garnishment of wages is misleading because it omits that Navy Federal would first have to obtain a judgment against the plaintiffs. In addition, the plaintiffs note that the threat to

12

report their defaults also referenced that the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, would allow current or future employers to obtain the information reported. According to the plaintiffs, the FOIA exempts their personal financial information from such disclosures.[3] In reply, Navy Federal reasserts its previous arguments for summary judgment.

Upon careful consideration of the above, this Court concludes that the plaintiffs have failed to present a genuine issue of material fact with regard to whether Navy Federal used fraudulent, deceptive, or misleading representations in violation of § 46A-2-127. First, this Court agrees that Navy Federal could have lawfully sought to garnish the plaintiffs' wages. See W.Va. Code §§ 38-7-15 and 46A-2-118. In so finding, this Court rejects the plaintiffs' argument that a threat to seek garnishment of a consumer's wages is fraudulent, deceptive, or misleading, solely because the debt collector did not explain that it would have to first obtain a judgment.

Second, this Court agrees that Navy Federal was entitled to report the plaintiffs' default to consumer reporting agencies pursuant to the FCRA. See 15 U.S.C. § 1681s-2. As a prerequisite to this entitlement, the FCRA requires a furnisher of negative information, including delinquencies, to provide a notice of such furnishing to the consumer. See § 1681s-2(a)(7)(A). Here, each agreement notified the plaintiffs that Navy Federal was permitted to report their default to consumer reporting agencies. (See [Doc. 59-3] at 9, 11,

---

[3]The plaintiffs also contend for the first time that the specified representations constituted the furnishment of legal advice, which is prohibited by W.Va. Code § 46A-2-123(a). In reply, Navy Federal argues that plaintiffs should not be able to assert a § 46A-2-123(a) claim at this stage when they neither asserted such a claim in their Complaint nor sought leave to amend. This Court agrees and finds that the plaintiffs are precluded from asserting a claim pursuant to § 46A-2-123(a).

13, 15, 17, & 21).  For these reasons, Navy Federal's representation that it would negatively report the plaintiffs' defaults to consumer reporting agencies is not fraudulent, deceptive, or misleading.  Similarly, Navy Federal's indication that the information furnished to the consumer reporting agencies could then be obtained by current or future employers pursuant to the FOIA does not constitute a fraudulent, deceptive, or misleading representation.  Information that a consumer defaulted on personal expense loans, vehicle loans, or credit cards does not fall into any of the categories of information exempted from the disclosure required by the FOIA.  See 5 U.S.C. § 552(b).

Finally, this Court agrees that the agreements at issue expressly permit Navy Federal to seek attorneys' fees and other reasonable costs associated with collecting its debt once the plaintiffs defaulted.  The two personal expense loans and the three vehicle loans identically provide that "[i]n the event of default, all reasonable costs of collection including but not limited to court costs, expenses and reasonable attorney's fees, will be paid by the Borrower."  ([Doc. 59-3] at 10, 12, 14, 16, & 18).  Similarly, Navy Federal's credit card agreements provide that in the event of default, Navy Federal may "declare due and payable the unpaid portion of [the] balance, together will all costs relating to the collection, of this account but not limited to unassessed finance charges, court costs, expenses and attorney fees."  (Id. at 22).  The plaintiffs do not dispute that they were in default when Navy Federal made the representation about attorneys' fees and legal costs. As such, the representation cannot be characterized as fraudulent, deceptive, or misleading as a matter of law because § 46A-2-127(g) applies only when "such fees or charges may not legally be added to the existing obligation."  Accordingly, the plaintiffs' § 46A-2-127 claim in Count I is hereby **DISMISSED**.

### 4.     W.Va. Code § 46A-2-128 (Unfair or Unconscionable Means)

During discovery, the plaintiffs limited their claim that Navy Federal used unfair or unconscionable means to § 46A-2-128(c) and (d), which prohibit a debt collector from collecting or attempting to collect "all or any part of the debt collector's fee or charge for services rendered" or "any interest or other charge, fee or expense incidental to the principal obligation" unless authorized by the parties' agreement.

In its motion, Navy Federal argues that the plaintiffs cannot maintain claims pursuant to § 46A-2-128(c) or (d) because the loan agreements and credit card contracts permit it to recover court costs, expenses, and reasonable attorneys' fees from the plaintiffs in the event of default. In response, the plaintiffs argue, without elaboration, that Navy Federal's reference to the legal consequences of their default "can . . . constitute an unfair of [sic] unconscionable means under Section 128." ([Doc. 65] at 9). Navy Federal does not discuss § 46A-2-128 in its reply brief.

Upon careful consideration of the above, this Court concludes that the plaintiffs have failed to present a genuine issue of material fact concerning whether Navy Federal used unfair or unconscionable means in violation of § 46A-2-128(c) and (d). As explained in dismissing the plaintiffs' § 46A-2-127 claim, the agreements at issue permit Navy Federal to recover court costs, expenses, and reasonable attorneys' fees from the plaintiffs in the event of default. As such, Navy Federal could not have violated § 46A-2-128(c) or (d), both of which apply only when an agreement does not authorize the fees referenced. Accordingly, the plaintiffs' § 46A-2-128 claim in Count I is hereby **DISMISSED**.

### 5. W.Va. Code § 46A-2-129a (Deceptive or Oppressive Telephone Calls)

Pursuant to W.Va. Code § 46A-2-129a, "[n]o debt collector shall place a telephone call or otherwise communicate by telephone with a consumer or third party, at any place, including a place of employment, falsely stating that the call is 'urgent' or an 'emergency.'"

In its motion, Navy Federal presents two arguments in support of summary judgment, namely: (1) the plaintiffs voluntarily dismissed any § 46A-2-129a claim based upon a fax containing the word "urgent," and (2) the plaintiffs have not presented evidence that the calls were not, in fact, urgent. In response, the plaintiffs argue that they have not voluntarily dismissed their § 46A-2-129a claims. However, the plaintiffs provide no response regarding the falsity of any statement that the calls were urgent. In reply, Navy Federal reasserts its two previous arguments for summary judgment.

Upon careful consideration of the above, this Court concludes that the plaintiffs have presented a genuine issue of material fact precluding summary judgment on their § 46A-2-129a claims concerning the phone calls placed. The issue of falsity is a matter for the trier of fact. To hold otherwise and accept Navy Federal's argument that the calls were urgent because the plaintiffs were in default would unreasonably eliminate any application of § 46A-2-129a. Accordingly, the plaintiffs' § 46A-2-129a claims in Count I **MAY PROCEED** to the extent that they are based upon telephone calls in which Navy Federal falsely stated that the matter was urgent. In this regard, the Court agrees with Navy Federal that the plaintiffs have voluntarily dismissed their § 46A-2-129a claims that were based upon fax transmissions. (See [Doc. 10] at 3; [Doc. 11] at 3 n. 1).

### B. Count II: Willful Violations – W.Va. Code § 46A-5-105

In Count II, the plaintiffs claim that the violations contained in Count I were committed willfully, and thus, the plaintiffs should be awarded "punitive damages" pursuant to W.Va. Code § 46A-5-105. ([Doc. 1] at ¶ 25). In support of this claim, the plaintiffs allege that the actions of Navy Federal represent its stated policy and were carried out by its employees in knowing violation of state law. (Id.). For the reasons that follow, this Court will **GRANT** summary judgment in favor of Navy Federal on Count II.

W.Va. Code § 46A-5-105 provides, as relevant here, that:

> If a creditor has willfully violated the provisions of this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practices, . . . the court may cancel the debt when the debt is not secured by a security interest.

Three reasons require summary judgment dismissal of Count II. First, the exclusive remedy provided in § 46A-5-105 is the cancellation of unsecured debt, not punitive damages. Second, the penalty provision of the WVCCPA has been interpreted to preclude the award of punitive damages. See **One Valley Bank of Oak Hill, Inc. v. Bolen**, 188 W.Va. 687, 692, 425 S.E.2d 829, 834 (1992) ("[P]unitive damages are not available under the fraud or unconscionable conduct provisions of [the WVCCPA]."). Third, the plaintiffs appear to withdraw their request for punitive damages in responding to the instant motion by stating: "The Plaintiffs will seek actual and statutory damages on the basis of the WVCCPA violations. The Plaintiffs will not seek punitive damages on the basis of the tort of intentional infliction of emotion [sic] harm." ([Doc. 65] at 11). For these reasons, Count II (Willful Violations) is hereby **DISMISSED**.

## CONCLUSION

For the foregoing reasons, this Court concludes that Defendant Navy Federal Credit Union's Motion for Summary Judgment **[Doc. 59]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: December 14, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE